Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SUCN RAMÓN VÁZQUEZ TORRES y otros<br><br>Apelantes<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAROLINA, JOSÉ E. APONTE DE LA TORRE en su carácter de ALCALDE DEL MUNICIPIO AUTÓNOMO DE CAROLINA<br><br>Apelados | TA2025AP00260 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.: F CD2007-0353 (407)<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el juez Rivera Torres, la jueza Santiago Calderón y la jueza Álvarez Esnard.[1]

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 29 de septiembre de 2025.

Comparece ante nos la Sucesión de Ramón Vázquez Torres, compuesta por Marisel Vázquez Delgado y Ramón Vázquez Delgado (en conjunto, "los Apelantes") mediante *Recurso de Apelación* presentado el 19 de agosto de 2025. Nos solicita la revocación de la *Sentencia* emitida el 26 de febrero de 2025, notificada el 21 de marzo de ese año por el Tribunal de Primera Instancia, Sala Superior de Carolina ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *No Ha Lugar* la causa de acción instada por el señor Ramón Vázquez Torres ("señor Vázquez Torres"), pues el contrato que éste suscribió con el Municipio Autónomo de Carolina ("Municipio") no constaba inscrito en la Oficina del Contralor de Puerto Rico.

Por los fundamentos que expondremos a continuación, **desestimamos** el recurso de epígrafe por falta de jurisdicción.

---

[1] Mediante Orden Administrativa OATA-2025-162, se modificó la integración del Panel.

**I.**

Los hechos de este caso se remontan al 27 de febrero de 2007 cuando el señor Vázquez Torres presentó *Demanda* sobre cobro de dinero contra el Municipio y su entonces alcalde, José Aponte de la Torre (en conjunto, "los Apelados").[2] El señor Vázquez Torres alegó que el 19 de marzo de 1999 suscribió un contrato de servicios profesionales con el Municipio. Esbozó que por virtud de dicho contrato "se comprometió a llevar a cabo una investigación y análisis para determinar las deudas relacionadas con la aportación en lugar de impuestos de la Autoridad de Energía Eléctrica a la parte demandada durante los años 1983-84 al 1989-1990 [...]".[3] Esgrimió que mediante el aludido contrato, el Municipio se obligó al pago de honorarios contingentes a los ingresos que el Municipio obtuvieran con posterioridad a que el señor Vázquez Torres le reclamara a la Autoridad de Energía Eléctrica ("AEE") las aportaciones adeudadas.

Arguyó el señor Vázquez Torres que el 10 de junio de 2004, el foro primario emitió *Sentencia Parcial*. De dicho dictamen surge que el Municipio y la AEE llegaron a un acuerdo en el cual el Municipio recibiría de la AEE la cantidad total de seis millones trescientos veintiséis mil doscientos catorce dólares con setenta y seis centavos ($6,326,214.76). Esbozó que dicha cuantía se dividiría en tres millones cuatrocientos cuarenta y un mil cuatrocientos sesenta dólares con ochenta y tres centavos ($3,441,460.83), en efectivo y dos millones ochocientos ochenta y cuatro mil setecientos cincuenta y tres dólares con noventa y tres centavos ($2,884,753.93), en pagos para obras de infraestructura eléctrica del Municipio.

---

[2] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 1-3.
[3] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, pág. 1.

En vista de lo anterior, el señor Vázquez Torres reclamó el monto de seiscientos treinta y dos mil seiscientos veintiún dólares con cuarenta y siete centavos ($632,621,47), en concepto de honorarios por sus servicios conforme lo estipulaba el contrato firmado con el Municipio.

En respuesta, el 1 de mayo de 2007, los Apelados presentaron *Contestación a Demanda* mediante la cual negaron las alegaciones contenidas en la *Demanda* y levantaron sus defensas afirmativas.[4]

Surge del expediente que, tras varias incidencias procesales, el foro primario dictó *Sentencia* el 15 de mayo de 2013, la cual fue notificada el 29 de mayo de dicho año.[5] Mediante esta, el foro primario concluyó que el contrato otorgado entre el señor Vázquez Torres y el Municipio había vencido el 19 de marzo de 2000. En ese sentido, el foro *a quo* concluyó que el señor Vázquez Torres estaba impedido de reclamarle al Municipio cualquier compensación económica por el dinero recibido por los Apelados en el año 2004. Determinó el foro *a quo*, que para esa fecha, el Municipio no tenía relación contractual con el señor Vázquez Torres.

Posteriormente, la aludida *Sentencia* fue confirmada por este Tribunal de Apelaciones mediante *Sentencia* emitida el 12 de mayo de 2014 en el alfanumérico KLAN201301217.[6] Sin embargo, el 4 de mayo de 2016, el Tribunal Supremo de Puerto Rico dictó *Sentencia* en el alfanumérico CC-2014-0660, y revocó la *Sentencia* del Tribunal de Apelaciones devolviendo así el pleito al foro primario.[7] Nuestra más Alta *Curia* razonó que el foro primario debía permitirle al señor Vázquez Torres presentar prueba que demostrara el beneficio económico recibido por el Municipio fue producto de su trabajo.

---

[4] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 4-5.
[5] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 157-176.
[6] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 179-199.
[7] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 201-213.

Transcurrido un tiempo, el 14 de diciembre de 2018, se presentó *Primera Demanda Enmendada*.[8] En esta, se comunicó que el 15 de septiembre de 2018, falleció el señor Vázquez Torres por lo que sus hijos, Marisela Vázquez Delgado y Ramon Vázquez Delgado, los aquí Apelantes, lo sustituyeron en calidad de demandantes. Por su parte, el 19 de marzo de 2021, los Apelados presentaron *Contestación a Primera Demanda Enmendada*.[9] Por virtud de este escrito, negaron las alegaciones de la demanda enmendada, afirmaron que no se adeudaba suma alguna y reiteraron que no hubo beneficio económico derivado por el Municipio por razón del fruto del trabajo del señor Vázquez Torres. De igual forma, los Apelados expusieron sus defensas afirmativas, entre las cuales incluyeron los términos y condiciones que surgen del contrato de servicios profesionales suscrito el 19 de marzo de 1999 entre el Municipio y le señor Vázquez Torres.

Así las cosas, el 29 de agosto de 2023, las partes presentaron *Informe de Conferencia Preliminar entre Abogados* en el cual las partes expusieron sus respectivas teorías legales y la prueba que pretendían utilizar en el juicio.[10] Así pues, tras celebrarse el juicio, el 26 de febrero de 2025, el foro primario dictó *Sentencia*.[11] En esencia, el foro *a quo* concluyó que el contrato objeto de la presente controversia no fue registrado en la Oficina del Contralor de Puerto Rico por lo que la reclamación de los Apelantes perdía "toda legitimidad".

Inconforme con este resultado, de manera oportuna, el 7 de abril de 2025, los Apelantes presentaron *Moción en Solicitud de Reconsideración bajo la Regla 47 de las de Procedimiento Civil y Determinaciones de hechos Adicionales o Enmiendas bajo la Regla*

---

[8] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 214-217.
[9] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 218-227.
[10] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 336-377.
[11] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 608-628.

*43.1 y 43.2.*[12] Mediante este escrito, invocaron las Reglas 43.1, 43.2 y 47 de Procedimiento Civil, 32 LPRA Ap. V, y solicitaron enmendar y reconsiderar la *Sentencia* emitida por el foro primario.

Por su parte, el 9 de mayo de 2025, los Apelados instaron *Moción Solicitando Resolución Denegando Moción del Demandante.*[13] Mediante esta, esbozaron que los Apelantes no argumentaron ni introdujeron nuevos argumentos a los ya presentados durante todo el pleito. Evaluado estos escritos, el 10 de junio de 2025, notificado el 20 de junio del mismo año, el foro primario emitió la siguiente *Orden*:

> EL (LA) SECRETARIO(A) QUE SUSCRIBE CERTIFICA Y NOTIFICA A USTED QUE CON RELACIÓN AL (A LA): MOCIÓN 1. EN SOLICITUD DE RECONSIDERACIÓN 2. SOLICITANDO RESOLUCIÓN DENEGANDO MOCIÓN DEL DEMANDANTE ESTE TRIBUNAL EMITIÓ UNA ORDEN EL 10 DE JUNIO DE 2025. SE TRANSCRIBE LA DETERMINACIÓN A CONTINUACIÓN:
>
>     1. NO HA LUGAR A LA RECONSIDERACIÓN.
>
>     2. VEASE RESOLUCION CON FECHA DE HOY.[14]

Aun inconforme, el 19 de agosto de 2025, los Apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> Primer Error: erró el Tribunal de Primera Instancia al no reconsiderar o enmendar la Sentencia de conformidad con las determinaciones de hechos adicionales o enmendadas sometidas mediante moción radicada bajo las Reglas 43.1, 43.2 y 47 de las de Procedimiento Civil.
>
> Segundo Error: erró el Tribunal de Primera Instancia al descartar una estipulación escrita y firmada por ambas partes que se convirtió en una admisión de hechos sin que se probara su improcedencia.
>
> Tercer Error: Erró el Tribunal de Primera Instancia en su interpretación de la prueba documental y testifical al establecer como un hecho y concluir que el contrato en controversia nunca fue registrado en la oficina del contralor fundamentándose exclusivamente en una certificación de la oficina del contralor y una interpretación incompleta y errada del testimonio de la funcionaria de la oficina del contralor.

El 27 de agosto de 2025, en aras de auscultar la jurisdicción del presente recurso, este Tribunal de Apelaciones le concedió al

---

[12] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 629-640.
[13] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 641-643.
[14] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, pág. 644.

foro primario, un término de cinco (5) días para remitir, en calidad de préstamo, los autos originales del caso F CD2007-0353. Por su parte, 18 de septiembre de 2025, los Apelados comparecieron ante esta *Curia* mediante *Alegato en Oposición y Solicitando Desestimación*.[15] Por virtud de este escrito, sostuvieron que el contrato en controversia no contenía los elementos básicos para poder ser registrado en la Oficina del Contralor. Por su lado, el 23 de septiembre de 2025, los Apelantes presentaron *Moción en Solicitud de Orden y en Relación con el Alegato en Oposición*. Por virtud de este escrito, reaccionaron a la orden emitida por esta *Curia* en cuanto a elevar los autos originales, y reiteraron que este Tribunal de Apelaciones ostentaba jurisdicción para atender el presente caso. Además, solicitaron autorización para someter transcripción de la vista oral. Con el beneficio de las posturas de las partes, procedemos a resolver.

## II.

### A. Jurisdicción

Como cuestión de umbral, antes de considerar los méritos de un recurso, a este Tribunal le corresponde determinar si posee jurisdicción para atender el recurso ante su consideración pues "[l]os asuntos relacionados con la jurisdicción de un tribunal son privilegiados y deben atenderse con preeminencia" *Pérez Rodríguez v. López Rodríguez et al.* 210 DPR 163, 178, (2022). "[L]a jurisdicción se refiere al poder o la autoridad que tiene un tribunal para considerar y decidir casos o controversias.". *Mun. Río Grande v. Adq. Finca et al.*, 215 DPR__ (2025) 2025 TSPR 36, pág. 10 citando a *Pérez Soto v. Cantera Pérez, Inc., et al.*, 188 DPR 98, 105 (2013). "Es norma reiterada que los tribunales deben ser celosos

---

[15] Si bien el título que lleva este escrito es *Alegato en Oposición y Solicitando Desestimación*, la misma no hace alusión a ninguna de las causales recogidas en la Regla 83 (B) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), para solicitar la desestimación de un recurso.

guardianes de su jurisdicción y el foro judicial *no* tiene discreción para asumir jurisdicción allí donde no la hay". *Beltrán Cintrón et al. v. ELA et al.,* 204 DPR 89, 101 (2020). Esto nos impone el deber de examinar la jurisdicción antes de expresarnos.

Cuando "un tribunal determina que carece de jurisdicción, lo único que puede hacer es declararlo y desestimar el caso en sus méritos". *Greene y otros v. Biase y otros,* 216 DPR __ (2025) 2025 TSPR 83, pág. 8.

Sobre ello, nuestra máxima Curia ha expresado lo siguiente:

> Reiteradamente hemos expresado que la ausencia de jurisdicción sobre la materia da lugar a las consecuencias siguientes: (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio. Beltrán Cintrón et al. v. ELA et al.,* supra, pág. 101-102. (Comillas y citas omitidas).

Como corolario de ello, la Regla 83(C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025) nos faculta, a iniciativa propia, a desestimar un recurso por falta de jurisdicción. Una apelación o un recurso prematuro, al igual que uno tardío, "sencillamente adolece del **grave e insubsanable** defecto de privar de jurisdicción al tribunal al cual se recurre". *Consejo Titulares v. MAPFRE*, 215 DPR__ (2024) 2024 TSPR 140, pág. 18 citando a *Juliá et al. v. Epifanio Vidal, S.E.*, 153 DPR 357, 366 (2001).

### B. Regla 43.1 de Procedimiento Civil

En nuestro ordenamiento jurídico una parte puede presentar ciertas mociones posterior a que se dicte una sentencia. Una de estas solicitudes es la contenida en la Regla 43.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 43.1. Esta dispone que:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación,

pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que éstas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, o podrá enmendar o hacer determinaciones adicionales y podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, éstas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, o no haya presentado una moción para enmendarlas, o no haya solicitado sentencia.

En otras palabras, la moción que se presente por virtud de la precitada regla va dirigida a que "el tribunal que dicta una sentencia la corrija mediante enmiendas formulando determinaciones de hecho –a base de la prueba presentada en juicio— o conclusiones de derecho pertinentes al fallo". *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 262 (2018), citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 466.

Una vez se presenta una solicitud para que enmienden o formulen determinaciones iniciales o adicionales, el término para recurrir en alzada se interrumpirá para todas las partes hasta tanto se **archive en autos copia de la notificación de la determinación de dicha moción**. *Morales y otros v. The Sheraton Corp.*, 191 DPR 1, 10 (2014). No obstante, para que dicha interrupción se concretice, es necesario que se cumplan con las especificaciones que la propia norma establece. *Íd.* En ese sentido, se necesita que toda solicitud de determinaciones de hechos adicionales contenga una propuesta que exponga, con suficiente particularidad y especificidad, los hechos que el promovente estima probados y se funde en cuestiones sustanciales. *Íd.*, citando Regla 43.2 de Procedimiento Civil, *supra.*

**III.**

Como cuestión de umbral nos corresponde examinar nuestra jurisdicción para atender los méritos del recurso presentado por los Apelantes.

Consta en el expediente, que el 19 de agosto de 2025, los Apelantes instaron el recurso de epígrafe ante esta *Curia*. Del mismo se desprende que se trata de un recurso de apelación el cual recurre de la *Sentencia* dictada el 26 de febrero de 2025 y notificada el 21 de marzo de 2025. Oportunamente, el 7 de abril de 2025, los Apelantes presentaron ante el foro primario un escrito intitulado *Moción en Solicitud de Reconsideración bajo la Regla 47 de las de Procedimiento Civil y Determinaciones de Hechos Adicionales o Enmiendas bajo la Regla 43.1 y 43.2.*

Al examinar este escrito, constatamos que en este se solicitan **dos (2) remedios** diferentes al amparo de dos (2) disposiciones distintas. La primera es una moción de reconsideración al amparo de la Regla 47 de Procedimiento Civil, *supra*, y la segunda es una solicitud de determinaciones de hechos adicionales al amparo de las Reglas 43.1 y 43.2 de Procedimiento Civil, *supra*. Ahora bien, sabido es que ambas solicitudes tienen el efecto de interrumpir el término para recurrir en alzada. No obstante, para que el término quede interrumpido es necesario que tanto la solicitud de reconsideración como la solicitud de determinaciones de hechos adicionales cumplan con sus respectivas reglas y sean lo suficientemente específicas. Evaluado dicho escrito, colegimos que ciertamente los Apelantes cumplieron con los requisitos que exigen las mencionadas reglas. En específico, referente a la solicitud de determinaciones de hechos adicionales, se desprende que los Apelantes solicitaron la inclusión de lo siguiente:

9. Como se sabe, en la vista evidenciaría de 26 de septiembre de 2023, la parte demandada presentó el testimonio de la Sra. Madeline Cruz Flores, quien testificó como empleada de la Oficina del Contralor, en particular del área de archivo y custodio de récords. Entendemos muy respetuosamente que la Sentencia omite partes esenciales de dicho testimonio, que incluyen admisiones de la Sra. Cruz Flores. A continuación, listamos las partes más importantes e imprescindibles para adjudicar la controversia:

    a) La testigo indicó que la Oficina del Contralor ya no conserva ningún contrato en papel o certificación en el registro de 1999 y no puede revisar si existieron en papel. (2:24.23 en adelante).

    b) Testigo no pudo certificar que en el sistema computarizado están todos los contratos registrados de 1999; ni que todos los contratos registrados de 1999 aparezcan en el registro computarizado. (*Id.*)

    c) Certificación presentada por la testigo (Exh. 1 - Demandado), se limita al "sistema computarizado de Registro"; no puede certificar que nunca existió el contrato en el registro. (2:25)

    d) La Certificación del 31 de julio de 2007, se le mostró y testificó que también se limita al registro computarizado. (2:26.07)

    e) Sistema de registro computarizado de ahora no es el mismo de 1999. Antes era más manual. (2:26.55)

    f) Una posibilidad para que el contrato exista y haya sido registrado: "puede ser que haya migrado". (2:30.24)

    g) Testigo no pudo indicar cuándo el sistema cambió a envío en PDF. (2:37.40)

    h) A preguntas de si podía afirmar con "certeza" que el contrato entre RVT y el Municipio, nunca fue registrado, contestó que "No", no podía certificar que nunca fue registrado.

    i) Se marcó el Exhibit 4 de la parte demandante "Lista de Disposición de Contratos" que había sido anunciado como prueba y no utilizado por el Municipio de Carolina, Se establecieron inconsistencias y falta de concordancia entre páginas del listado. Surgió que no aparecen todos los contratos de 1999 y que los contratos de 1999 ya cumplieron periodo de conservación, por lo que fueron destruidos. Al "Archivo General" no le interesaba conservarlos. (2:46.26 y siguientes)

    j) Tribunal Sólo aparecen contratos del Municipio de Carolina del año 1999 desde el 189 en adelante; no aparecen del 1 al 188 y la testigo desconoce la razón y no pudo explicar por qué no estaban ahí. (2:56.35)

10. Por otro lado, como se sabe la causa del epígrafe ya fue objeto de una Sentencia del Supremo de Puerto Rico (TSPR), Caso Número CC-2014-0660, cuando revocó una Sentencia dictada a favor de la parte demandada, quienes al día de hoy intentan aun relitigar.

12. La referida Sentencia del TSPR, que es hoy ley del caso, adjudicó y limitó las controversias y estableció una guía e instrucciones especificas en cuanto a lo que restaba por atender en la causa del epígrafe. A tales fines dispuso lo siguiente:

   a) Que el contrato suscrito no condiciona el pago de honorarios a los beneficios percibidos durante la vigencia del acuerdo.

   b) Que la condición impuesta por el contrato es que el beneficio económico derivado del Municipio sea fruto del trabajo de Ramón Vázquez Torres.

   c) Que el demandante es acreedor, una vez demuestre que realizó gestiones que redundaron en beneficio para el Municipio, sin importar que el Municipio recibiera el pago de tales beneficios, una vez el contrato haya culminado.

   d) El Municipio otorgó el contrato con el propósito de recobrar las sumas adeudadas por la A.E.E. en concepto de la aportación en lugar de impuestos (CELI).

   e) Durante la vigencia del Contrato, el Sr. Vázquez Torres, cursó comunicación al Municipio informándole sobre su posible acreencia, así como de su intención de presentar una reclamación administrativa para recobrarla.

   f) El Municipio tuvo conocimiento de los procedimientos de reclamación y optó por permitirle al Sr. Vázquez Torres continuar con la reclamación.

   g) "Poco sentido hace permitirle al Municipio otorgar un contrato por un término de un año, contingente a los posibles beneficios que obtenga durante dicho periodo, cuando el Municipio tiene pleno conocimiento de que la adjudicación de la gran mayoría de las reclamaciones administrativas y judiciales toman un término mayor". (Sentencia Tribunal Supremo, pág. 12)

   h) El Municipio fue quien estuvo a cargo de la redacción del Acuerdo con el Sr. Vázquez Torres.

   i) El TPI deberá permitirle a la parte demandante presentar prueba que demuestre que el beneficio económico recibido por el Municipio fue producto de su trabajo.[16]

Ahora bien, el 10 de junio de 2025, notificada el 20 del mismo año, el foro *a quo* dispuso lo siguiente:

1. NO HA LUGAR A LA RECONSIDERACIÓN.
2. VEASE RESOLUCION CON FECHA DE HOY.[17]

Nótese que, de esta determinación, se desprende claramente que el foro primario resolvió **únicamente** la moción de reconsideración. La precitada expresión no contiene lenguaje alguno que nos lleve a concluir que el foro primario resolviera la

---

[16] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, págs. 631-632.
[17] Véase, SUMAC TA, Entrada 1, Apéndice del Recurso, pág. 644.

moción de determinaciones de hechos adicionales, la cual como mencionamos, interrumpió el término para acudir ante esta Curia. Asimismo, cabe destacar que mediante *Resolución* emitida el 28 de agosto de 2025, esta Curia solicitó elevar los autos originales para examinar si existía alguna determinación con respecto a la solicitud de determinaciones de hechos adicionales. Al examinar los autos, no se encontró dictamen alguno que dispusiera dicha solicitud.

En vista de lo anterior, es forzoso concluir que esta Curia carece de jurisdicción para atender el recurso de epígrafe. Ello responde a que, conforme se desprende del expediente, el foro primario no ha resuelto la solicitud de determinaciones de hechos adicionales interpuesta por los Apelantes. La consecuencia de este hecho es que los términos para recurrir ante este Tribunal de Apelaciones permanecen interrumpidos hasta tanto el foro *a quo* resuelva la aludida solicitud. Por tanto, corresponde desestimar el recurso por falta de jurisdicción al este ser prematuro.

**IV.**

Por los fundamentos expuestos, **desestimamos** el recurso presentado por falta de jurisdicción.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones